All righty and we'll hear first from Mr. Caruso. May it please the court Michael Caruso assistant federal defender on behalf of Mr. Carter and also to dispel the notion that Mr. Adler is the only lawyer at the Federal Defender's Office. But like the previous case Mr. Carter's case also involves the lack of if the minor witness who was identified in counts three and four would be a witness in the trial. The prosecutor said no but offered no explanation as to why the minor witness would not be appearing. Certainly the prosecutor never made a proffer that they had made a good-faith attempt to secure the minors appearance at trial. Nevertheless at trial they did introduce the minor statement made to the police after she was detained during a sting operation that exculpated herself and accused Mr. Carter of sex trafficking. By doing so the government evaded the basic purpose of the Sixth Amendment's right to confrontation. That witnesses against a person come into court swear an oath and are subject to cross-examination. We think based on the facts of this case that the district court judge violated Mr. Carter's right to confrontation. The minor witnesses who who went by the name of Amber statements to the police in the hotel room after the sting operation were clearly testimonial. An objective witness would reasonably understand that those statements would be available for a later prosecution and indeed they were. We also say that this was not a so-called emergency exception to the confrontation clause. The Supreme Court has made clear that the existence of an emergency which we say did not happen here but even if an emergency occurred is not dispositive to the issue. Finally because the government in closing argument referred to Amber's statement as part of the gold standard of evidence that they had presented to the jury we don't think that the government can prove beyond a reasonable doubt that the error was harmless. So we think Mr. Carter's conviction should be reversed based on that violation of his right to confrontation clause. In the alternative we don't think the statement should have come in under the federal rules of evidence. The judge found that this out-of-court statement came in or was admissible under federal rule of evidence 8032 the excited utterance. How was it not an excited utterance? You have a minor who is a sex trafficking victim in a hotel room waiting for a man who has paid for her services to walk in and instead the police walk in and the police have described the situation as she was having an emotional meltdown. Well to back up judge so there are three requirements for the excited utterance as you know a startling event the person being under the sway of excitement and the statement relating to the startling event. The cases that we've cited in our briefing really go to show that one this is not the type of startling event that triggers admissibility under rule 803 because Amber was 17 years old she had been doing sex work unfortunately prior to coming to Miami. She had been arrested and convicted before and like the court said in Sewell the case we cited in our briefing when someone is knowingly committing a crime the fact that they are arrested cannot really be considered a startling event in that it's reasonably to be expected when you're committing a crime that you may be arrested so we think under the Sewell case which we principally rely on it was not a startling event. And I know in your briefing you've referred to her as an experienced sex worker but why should we not take her as she is which is a minor who is a victim of sex trafficking and especially as we evaluate the excited utterance. Right I think you can definitely take into consideration her age but I think that is just only one factor again based on the Sewell case the fact that she's been arrested while she's knowingly committing a crime and had previous interaction with the criminal legal system I think is another factor and part of the reason we didn't have any adversarial testing in this case right we weren't able to cross examine Amber and the issue is that the police officer who testified about her statement yes said she was having an emotional reaction but also said she was having a temper tantrum which again seems to me different than being under the sway of excitement she was angry and frustrated that she had been arrested and we think that that takes that out of the excited utterance exception. But even if it came in properly as an excited utterance we still believe that the admission of this evidence violated Mr. Carter's right to confrontation. Can I skip ahead for just a moment? Absolutely. Why wouldn't it have been harmless? I mean the statements that she made were that she was being that you know she was being coerced to be there basically but that wasn't really an element of the charged counts was it? So yes yes and no Mr. Carter was not charged by trafficking her by force but the elements of both accounts where Amber was the identified victim counts three and four required the government to prove that Mr. Carter intended she engage in prostitution. But isn't there ample evidence of that in the record? I mean the record does seem to be overwhelming with respect to the evidence of that. So so I I don't think I don't think so your honor. You know one and again the government referred to this evidence as the gold standard so they obviously thought that this was important or critical evidence to their case that this statement but also the adult victim who testified didn't really say anything about Amber. I think the only direct testimony that she gave was that Amber and Mr. Carter had a friendly relationship and if you also look at the text messages that were introduced between Mr. Carter and Amber there is sort of no evidence that he was sort of intending her to engage in prostitution in in Miami at that at that hotel. So we don't we don't think there was there was overwhelming evidence with regard to Amber for either count three and four. You know especially for the transportation count there is no evidence in the record as to why Amber came from Georgia to Miami with Mr. Carter. I mean isn't there evidence that that there was an ad of the two of them that that there were statements about there was nothing going on in Atlanta so we're going down to Miami for the Super Bowl because we can get business there. I mean. Well the evidence the evidence regarding that is is not clear your honor. For example as we point out in our briefing the trial prosecutor never asked the adult witness why they whether they were coming to Miami to do commercial sex work. The evidence that came out in the case was that they were coming to Miami so the adult could get a job at a local strip club and dance and in fact the evidence supports through text messages that Mr. Carter was communicating with a contact he had in Miami about getting the adult a job at at the strip club. So there was absolutely true. But then there are also aren't there also wasn't there other evidence about how about how he would teach teach people how to get business in the VIP rooms at the at the dancing places I guess. So there was evidence from the government's expert and and through the adult but we're talking we're talking about Amber here. There was there was no. But he's trying to get her a job at one of these places. The adult not Amber. Okay. But Amber's underage I would assume that probably because she's under 18 per prevents her from getting a job at a strip club. But she's coming to she was being he was getting commercial sex jobs for the minor when they were in Atlanta. They said nothing's going on in Atlanta. He brings the adult victim and the minor victim down to Florida with the Super Bowl gets the adult victim a job at a sex at a strip club where sex work can be found. And there was evidence in the record that he would send them both on jobs. Right. So let me try to unpack that. Judge Brandt won. You know the fact that she was 17. Like I don't have a record citation for this but I think over 90 percent of high school seniors in the United States have I.D. saying that they're over 18. So I think the fact that she was 17 would not have been an for her to get that job. We also unless you're saying she might have had a fake I.D. but there's no evidence in the record. So if there's no evidence in the record you have a minor who's 17 who would not be able to work in a strip club. That's right. But this is the government's burden to prove harmlessness. The other is there is there is no evidence that Mr. Carter was working with Amber to get her commercial sex work in Georgia. The evidence in the record was that he did do that with the adult witness. But there is no evidence one because Amber didn't testify and wasn't asked these questions. And the adult who did testify really never testified about the relationship she had with Mr. Carter except to say that they had a friendly relationship. So I think sort of based on the record we just we disagree that the evidence was overwhelming with at least with regard to Amber and counts three and four. And I'll reserve the remainder of my time. Didn't didn't A.V. also testify that didn't the adult victim Amber. No the adult victim testified that Carter told the women to sleep on the drive because when when we got there we were going to work. Yes. And that's unclear whether that was referring to commercial sex work or working in the strip club. Again the trial prosecutor never never asked the adult witness what that what she understood that statement to mean. And again the adult the adult witness was abundantly clear that she wanted to go to Miami to work at a strip club. I'm have serious issues regarding the constructive amendment of the indictment all right. Well I thought you were going to answer that. I mean you were answering the question I don't mean to suggest otherwise. But let me just ask you one other thing related to that because I do I want to make sure that I've given you the opportunity to address some of the other issues which I think seem like they're kind of overwhelming evidence. There was also evidence that both the adult victim and Amber together went on the twelve hundred dollar sex date within the first day that they arrived in Miami and the adult victim testified that Mr. Carter had facilitated the date by posting the online ad. I mean and the ad of course featured both of them and it described the minor victim as a one in a million experience and the adult victim gave Carter the money right after this joint date. So why isn't that enough to show that he knew what was going on and was there facilitating her prostitution? So again if I could if I could separate out counts three and four with regard to the transportation you know as we argued in our brief the intent to engage in commercial sex work or prostitution has to be has to be intended prior to the transportation over state lines. So we think events that occurred in Miami after there was an attempt to get work at a strip club don't really come into play with regard to that and certainly the government can't rely on that to overcome their burden. And again with regard to count three you know the issue is that the jury heard through Detective Villa that Amber said she was forced to do this without any adversarial testing without any cross-examination when there was absolutely no evidence in the record that Mr. Carter was forcing Amber to do anything. Again the adult witness said that they had a friendly relationship and and had nothing to do with force. So we think that the importance the impact at that statement that Mr. Carter didn't have an opportunity to test through cross-examination you know renders his conviction sort of unfair because of violation of the Confrontation Clause. Alright thanks for taking the time to explain your view on that to me I appreciate it and we'll hear next from Mr. Romano. And Mr. Romano I took Mr. Caruso over so we're gonna give you three extra minutes don't think of it as a challenge you don't have to use all your time if you don't want to but if you want to it's there. Thank you Your Honor. May it please the court John Alex Romano on behalf of the United States I'd like to begin by addressing the Confrontation Clause challenge to the admission of the minor victims out-of-court statements. There was no confrontation violation because the statements were not testimonial they were not made for the primary purpose of producing an out-of-court substitute for trial testimony. They arose in the context of the police's response to an ongoing emergency involving... Let me ask you I mean the content of those statements it seems like the content of those statements how does that relate to what was happening there? Why isn't that you know her attempts to give an exculpatory? I think that the content of the statements actually work in favor of viewing this as an ongoing emergency situation at least within the first 30 seconds when these statements are made and that's the time frame that we're talking about. The court can verify the testimony on the 30 seconds at pages like 108 to 109 of docket entry 181. But you know the lead-up to this police encounter is that law enforcement is conducting an operation to identify potential victims of human trafficking. And as your honors noted Detective Villa was responding to an ad in Mega Personals showing two females one was young and then had indicia of red flags of human trafficking going on. And then again this is just in the lead-up to the encounter but Detective Villa after arranging the date receives a call from the minor victim that she's on her way to the hotel and in the background he hears a male voice giving an instruction to the minor victim. That is reasonably that could be the victim's pimp. And when she arrives in the hotel room before the law enforcement comes in Detective Villa testifies that she appears nervous, unsure of herself. She appears young like a deer in the headlights. All of these are you know again potential indications of human trafficking. And then when law enforcement comes in within the first 30 seconds the minor victim breaks down. She loses control of her emotions. Yes, Detective Villa said she strung a temper tantrum. But she's bawling. The clear indications that she's lost control of her emotions. And she says I don't even want to be here. I was forced to come. She's effectively saying I'm a victim here. According to Detective Villa's testimony the officers try to calm her down sort of say who they are. They're there for her welfare, her safety. And then it's at that point she makes the additional statement about offering to view her phone. So I think the spontaneity of her statements, the immediacy with which they happen, the fact that she's saying I'm here against my will. I'll point to this being. But another fair interpretation would be she's worried about getting arrested. And so she's trying to give an explanation about why she shouldn't be. That would be one factor that the court considers that the court could consider. And of course the Supreme Court says you have to look at the this objectively from all sides right. The perspective of the law enforcement, of the declarant, of all the circumstances. But I would offer that the fact that this occurs. The first statement is spontaneous. And the second statement about offering to see the phone is really on the heels of that as law enforcement is trying to reassure her. And I think that that counts more significantly in the analysis than an interpretation that would suggest at this point that she is. And again going back the definition of what a testimonial statement is. That she's trying to provide an out of court substitute for testimony that's going to be used down the line in trial. And I think if the court looks at like. But if you look at it that way right. You know she's giving herself. She can, if she has to go to trial for some reason on this. She gets arrested. She has to go to trial on it. She can say I told them as soon as I was arrested. I didn't want to be there and I was being forced. Understandably Your Honor. But I think the fact that this occurs. It's a spontaneous statement. The can make spontaneous statements that are false exculpatories too. I mean. And I think considering the fact that this is a minor. And a victim of human trafficking. There was testimony at trial that human trafficking victims are often have a profound fear of law enforcement. Because they're taught that law enforcement is enemy number one. So I think that would need to be taken into account too. As just another circumstance. I'm not suggesting that you know this situation always remains an emergency. At a certain point an emergency situation can morph into a backward looking investigation. But you don't have that here in the first 30 seconds. It's a fluid situation. Law enforcement is coming in. They're trying to establish control of the situation. And reassure the victim. And I think we also have to bear in mind. Just one last point on the emergency exception. Or the ongoing emergency doctrine. That at that point when the minor victim makes the statements. Officers still don't know where the pimp is. Again they have reason to believe that she has a pimp. She says she's there against her will. They heard. Detective Veer heard a male voice in the background. When minor victim calls that she's on her way. Pimp could have been in the lobby. He could have been waiting outside in the car. And Detective Veer knew that you know he'd only negotiated a one hour date. So certainly you know at least within the hour. Very strong likelihood that the person who was trafficking the minor victim would come back looking for her. And all that is just to say that in these first 30 seconds. The first minute of this encounter. Government submits that there's a good case for treating this as an ongoing emergency. And there are parallels to the Graham case that we've cited in our brief. Where the Seventh Circuit held that a declarant statement. Identifying a pimp at a motel. And telling officers who arrive on the scene that he's up there with a prostitute. And he the pimp used to traffic me. The Seventh Circuit held that those statements were not testimonial. Because they rose in the context of a police response to an ongoing emergency. I think you have a similar situation here. I would offer that the circumstances are even stronger for treating this as an emergency situation than in Graham. Because in Graham the declarant was actually handcuffed. When she makes the statements. And you can see in the Graham decision that the declarant was actually a co-defendant. She was a co-conspirator who. Although having been trafficked earlier. Went on to help the defendant in his prostitution business. Alright. Now let's just assume for the purposes of this question. We haven't discussed this. We haven't made any decisions. But let's just assume for the purposes of this question. That we think that there was a violation. Or that this is inadmissible. Why is this then harmless error given that the prosecutor at the time described this as the gold star standard? Yes your honor. We do think it is harmless. Even under the constitutional standard. Harmless beyond a reasonable doubt. And I would just like to place in context. The prosecutor's comments. And they occurred during rebuttal. And then I'll turn to the overwhelming strength of the evidence here. But the prosecutor's comments. Referring to the gold star evidence. I think it was. Occurred during rebuttal. They recur in response to the prosecutor. Sort of responding to an attack made by the defense's closing. On the credibility of the adult victim. And before the prosecutor even refers to the gold star evidence. Prosecutor makes the point that. She defends the credibility of the victim. And tells the jury. If you believe the testimony of the adult victim. That's all you need here to convict. Oh but you don't even need to consider this other gold star evidence. And the gold star evidence reference wasn't only. To the statements of the minor victim. Also referring to the statements. It was referring to all the evidence that law enforcement collected. So the contents of the abandoned Toyota Corolla. You know. After the police try to apprehend Mr. Carter. He drives off from the Lowe's hotel. And then abandons the black Toyota Corolla. There are a lot of incriminating evidence that's found. In that car. Including his Georgia identification. His fingerprints. The contents of the cell phones. Which were obtained pursuant to search warrants. So that was the reference to gold star evidence. It wasn't just to. These particular statements made by the minor victim. And again it came during rebuttal. All sort of. Proceeding from a defense of the adult victim's credibility. And then turning to the other points on harmlessness. One. Judge Rosenbaum. As I think you noted to my friend. The. The statements were collateral to the to the charges involving the minor victim. Neither sex trafficking of a minor. Under section 1591A. Or transportation of a minor. Under section 2423A. Requires showing that the minor was there against her will. Does not require. They do not require showing a forced fraud or coercion. And then you look at what the evidence showed. That that was relevant to the offense elements on those counts. It showed that it was Carter was the one who was trafficking minor victim. And it showed that his intent all along was to come to Miami. For prostitution. Purposes now as the identification piece. Adult victim. Testified. That you know when she returns from that second sex state in Miami on the second day they're there then. You know. That that Carter. Then took minor victim to her own sex state. At the Lowe's hotel. You also have in court identification by detective Corvo who attempted to apprehend Mr. Carter. At the Lowe's hotel when he returns to pick up the minor victim. You have the fingerprints in the abandoned vehicle. And then as to the evidence of what Mr. Carter's intent was for this Miami trip. We submit that it is overwhelming that he intended to prostitute both victims. In Miami. And we can start by backing up first. And considering all the evidence. On Instagram right. Mr. Carter posted on Instagram about being a pimp. He bragged about it. He referred to his victims in denigrating terms on Instagram. He tried to lure victims. In terms of the count that involved this specific minor. Under Judge Rosenbaum's. Question that she presented to you if we if these statements we find that these statements are inadmissible there are no other statements. From this minor victim. Against Mr. Carter's is that correct. That is correct she did not testify. But because she doesn't doesn't automatically lead to a confrontation clause violation. Because they were not testimonial. But your honor is correct. Those are the out of court statements. But there is other evidence. About. Mr. Carter's relationship and what he was doing to the minor victim. I disagree with my opponent's characterization that this was. According to the adult victim they just had a friendly relationship. There was a lot more. The adult victim testified for example. That in Atlanta before they take the Miami trip. That. The adult victim went and stayed with a minor victim in a in a motel room and and the minor victim would be having sex in the hotel room. But the adult victim was told to stay there in the bathroom to make sure that nothing happened to the minor victim. So there's evidence that. Mr. Carter is prostituting the minor victim in Atlanta. Again they leave Atlanta according to the victim's testimony because sex work is slow in Atlanta. And Mr. Carter tells them you better rest. During the trip because you're going to get to work. Once we're there sure enough the first day. Both go on a joint sex date. With the John. A date that Mr. Carter has arranged for them by posting the mega personals add for twelve hundred dollars. Testimony is clear that both victims. Have sex during this date adult victim testifies that minor victim had sex. With the John first but then complain. That she was hurting at that that the John was rough. And so then the adult victim has sex with the John. So there's evidence that on the very first day that they arrived in Miami. Mr. Carter is prostituting them and it's this court I think said in the Nicholson decision some of the most probative evidence of of of intent to travel. But the purpose of the trip is is what goes on during the trip and you have. Commercial sex date the first day. The next day the adult victim goes on a on a second date with the same John. And then the second day you know when she returns the minor victim is being taken by Mr. Carter to the hotel. And responding to this point about well adult victim testified or that the evidence show that Mr. Carter wanted to get the adult victim. A job at the strip club that evidence actually hurts Mr. Carter's claim here because the evidence showed that working at a strip club. Was a way to generate commercial sex dates right they don't make and testified that when she returns to Atlanta she's still working under the thumb of Mr. Carter. She works at a strip club the club called follies and there she procures twenty to thirty sex dates by virtue of working there. Separately Mr. Carter messages what on Instagram he's trying to lure a victim into his prostitution ring. He has a message that says. Making a play in a club is called B.I.P. I'm a teach you everything. That's pages one seventy eight to seventy nine docket entry one eighty three. The same contact in South Florida who Carter is asking about getting adult victim a job at a strip club. He also messages her asking her if she has any jobs because his girl you know the adult victim does that work. And of course you have the fact that Carter prohibited the minor victim. From working at a strip clubs so this. Really the only evidence of the only purpose that Carter was taking the minor victim down to Miami was was for prostitute her. And certainly light of all the evidence in the case. That we think it it it shows beyond a reasonable doubt. That Mr. Carter's. Main purpose dominant purpose even. Was to also prostitute the adult victim in Miami so for all those reasons to return to your your question judge Rosamond we do think that there is a strong case that to make that this was harmless error and I think that could be one path the court decides. That it's unnecessary to resolve the sixth amendment challenge and the role based challenge to the admission of the minor victims of course statements we think harmless error would be. Fairly easy path in which to decide this case. You just got. Can you discuss the rule based challenge that we kind of skipped over that I'm curious about your view sure we do think that the. Rule 803 to the excited utterance exception it is it is satisfied here and we're under an abuse of discretion standard for this particular. Claim all three. Requirements of the exception are satisfied you have a startling event. Fact that law enforcement is rushing in. And considering the fact this is a minor a victim of human trafficking and and as the testimony showed. What do you say in response to opposing counsel's argument that. Recognizing unfortunate situation at the minor victim was and this was not her first arrest so is this really a startling event and and again might she. Have some script at the ready and in case this were to happen to her I'd just like to clarify one thing you read there was a stipulation as the minor victims prior conviction it was free a drug offense this is not for a prostitution offense. My opponent can correct me if I'm wrong but I do think that that that makes a difference. If the court is going to consider her and I don't think she should all be considered some experience sex workers she was a minor. And she was manipulated by Mr Carter and the court can see I think at the top of page eight of our brief where we cite a message that sends to Mr Carter saying you manipulate me when I turn eighteen I'm gonna get my own place. So there is some coercion this is not some some rosy relationship. So I do think the fact that she is a minor victim still counts in terms of treating this as a startling event judge kid. And I don't think moving to the second requirement. There can really be a question that she's under the stress of the startling about what she makes the statements again this is within. Thirty seconds of law enforcement rushing in. Clear testimony from detective via that she is lost control of promotions. And then finally there is a relationship here. In our view a clear relationship between the startling event law enforcement coming in telling her. We're here for your safety we're concerned about your welfare. And the statements that she makes saying I'm here against my will. So we think there is a nexus there. We do submit that all three requirements are satisfied we don't think the admission of the statements for. Respect the roadways challenge was an abuse of discretion by the district court. Seem that my time is winding down unless this court has any further questions we would. Respectfully ask that it affirmed the judgment conviction thank you. All right thank you Mr Romano. And Mr Caruso you have four minutes thank you. So I'll try to go backward and and and go quickly with regard to the excited utterance. Exception you know two things that my friend mentioned I think sort of bear discussing. One this text message which where amber said she was going to get her own place within that text message. She said she's getting her own bread or own money. Which runs counter to the idea that Mr Carter was prostituting her because the government's expert testified. That of course a pimp doesn't allow the people who work for him to keep any of their own money. So this evidence through a text message that amber had her own money. Contradicts the government's theory. With regard to whether this was a startling point to judge kids. Question. The government expert also testified. That sex workers. Know how and are ready to evade law enforcement and avoid arrest. So of the. Being a startling event. Surely. The pimp is not going to coach. The prostitute to evade arrest by throwing him under the bus. So that's true that's true. But that's also evidence that he was not hurt her pimp. You know if we have if we have one idea that sex workers are trained not to give up the pimp. But she's giving up. The pimp through this statement sounds like it might be because it's an excited utterance. It could be just because she didn't want to be arrested and was angry and upset having it having a temper tantrum your honor. Because I think as the Sewell case said and I think judge Rosenbaum alluded to before. It takes very little time to figure out that the best strategy. Is to blame someone else and we think that's what was going on here. With regard to this so-called emergency exit is opposing counsel correct that she had one the minor victim had one prior arrest and it was for a drug offense. That's it she had not been arrested for any sort of commercial sex. As far as I know honor that that's correct. But I don't take my friend's point that. An arrest for for a drug possession. Sort of takes her it takes her out of the realm of knowing how to interact with with law enforcement. With regard to the so-called emergency exception. You know we write rely primarily on the Supreme Court case Hammond the seventh circuit case nor would. You know we you know and in our case amber was safely in the custody of the police. She had committed she had committed a crime in the view of detective via he was investigating this case. She was not free to leave. She was in no danger she was in a private hotel room there was no chance as the seventh circuit said in Norwood. That she was going to be released to the custody of Mr. Carter so there was no ongoing emergency. As it related to amber and Hammond is an even stronger case that's the Supreme Court case where the police went out to dismiss domestic disturbance call. And the woman the wife who was the declarant was in the house with her husband who was the abuser. The police had her in a different room in the Supreme Court held that she gave testimonial statements not subject to any so-called. Emergency exception well and you mentioned that there was no risk that the police were going to hand amber over to Mr. Carter short but the police are in a hotel room. And they don't know where Mr. Carter is so isn't there an ongoing emergency as to the police officers themselves. No not not. Now we don't we don't believe so your honor I know. A man was on the phone when they were setting up this. Date. And they don't know where that man is the so they suspect she has a pimp. They've gone they've arranged for the sex date and now they don't know where the pimp is is that not and a dangerous situation for the police. I don't debate based on the facts that are in the record I don't think that's a dangerous situation for the police your honor they can gain information as to when. Whoever the person was who is going to come back to the hotel. And try to seek to arrest or detain that person but there's no evidence in the in the record. That the police understood at the time that it was a dangerous situation. And I think the focus has to be more on amber's statements. And whether she was in danger from Mr. Carter and I think the record is is clear that she that she was not. Again what will finish up by saying that we don't believe that. The evidence in this case was was harmless beyond a reasonable doubt we actually that they came Mr. Carter's convictions. Thank you very much appreciate it.